**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| NOVAL INTERNATIONAL RESOURCES, LLC and LAVON WORLEY COLEMAN, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 12-2183-STA-tmp |
| ANDEC, INC. and RYAN EDWARD HENSLEY, | ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Before the Court is Defendant Andec, Inc. and Ryan Edward Hensley's Motion to Dismiss (D.E. # 9) filed on March 23, 2012.  Plaintiffs Noval International Resources, LLC ("Noval") and Lavon Worley Coleman have filed a response in opposition (D.E.# 16), to which Defendants have replied (D.E. # 22).  For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiffs' Complaint alleges that the parties entered into an asset purchase agreement on December 16, 2010.  (Compl. ¶ 10.)  Pursuant to their agreement, Defendant Andec, Inc. was to sell Plaintiff Noval telecommunications equipment for the sum of $12.5 million, a price which was later reduced to $9.5 million. (*Id.* ¶¶ 11,16.)  According to the Complaint, Defendant never delivered to Plaintiff many of the assets covered by the agreement.  (*Id.* ¶¶ 17, 18.)  As for the assets Defendant did deliver, Plaintiffs allege that the goods were not of the same quality, value, or quantity promised

1

in the agreement.  (*Id.* ¶ 20.)  Based on these allegations, Plaintiffs have asserted claims for breach of contract, fraud and/or intentional misrepresentation, conversion, and a declaratory judgment that Plaintiffs are no longer obligated to Defendants for any additional payments under the agreement.

In their Motion to Dismiss, Defendants argue that Plaintiffs' Complaint is subject to dismissal.  Defendants contend that Plaintiffs failed to affect proper service on each Defendant.  As a result, the Court should dismiss the suit pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  Defendants next argue that this Court lacks personal jurisdiction over Andec, Inc. or Defendant Hensley, and so the Court should dismiss this matter under Rule 12(b)(2).  Defendants emphasize that Andec is an Iowa corporation with its principal place of business in Davenport, Iowa, and that Hensley is an Iowa resident.  Defendants contend that none of the jurisdictional facts support either general or specific personal jurisdiction over the Defendants in this matter.  Therefore, the Court should grant the Motion to Dismiss.

Plaintiffs have responded in opposition.  Plaintiffs argue that counsel for Defendants have agreed to receive service of process on behalf of Defendants, rendering that issue moot.  As for the Court's exercise of personal jurisdiction over Defendants, Plaintiffs contend that Defendants have had continuous and systematic contacts with the state of Tennessee since 2003 such that this Court has general personal jurisdiction.  Plaintiffs claim that Defendants maintain a warehouse in Shelby County, Tennessee.  Plaintiffs also cite evidence that Hensley made several comments to Coleman about business he had conducted in Tennessee in the past.  Plaintiffs have also produced an email Hensley sent Coleman on January 27, 2012, where Hensley stated he might be traveling to Memphis on business in February 2012.  Plaintiffs go on to argue that their claims also arise out of or relate to Defendants' contacts with the state of Tennessee.  Plaintiffs assert that the asset purchase

2

agreement was signed in the state of Tennessee, that some of the goods were stored in Tennessee before being delivered to Plaintiffs, and that Defendant Hensley came to Memphis for the purpose of negotiating the agreement with Plaintiff Coleman.  Plaintiffs argue that the parties' contractual dealings evidence a continuous business relationship between them and suggest that Defendants purposefully availed themselves of the privilege of conducting business in the state of Tennessee. In the alternative, Plaintiffs argue that Defendants have committed tortious acts in the forum state and therefore specific jurisdiction exists pursuant to the Tennessee Long-Arm Statute.

In their reply brief, Defendants concede that their argument about improper service of process is now moot.  Defendants highlight that Plaintiff Noval has its principal place of business in Mississippi and that Noval took delivery of the contract goods in Mississippi.  The only connection to the forum state Plaintiffs can show is that Plaintiff Coleman is a Tennessee resident.  Defendants maintain that the only contacts Andec, Inc. has had with the state of Tennessee are the telephone calls made between the parties during the negotiation of their agreement.  Defendant Hensley denies that he has had any minimum contacts whatsoever with the state of Tennessee in his individual capacity.  Defendants further dispute some of the factual contentions made in Plaintiffs' response brief.

## **STANDARD OF REVIEW**

When a party challenges personal jurisdiction pursuant to Rule 12(b)(2), a plaintiff bears the burden of establishing the existence of jurisdiction.[1]  A plaintiff may not stand on his pleadings

---

[1] *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir. 1989).

but must, by affidavit or otherwise, set forth specific facts showing that the Court has jurisdiction.[2] In considering a properly-supported Rule 12(b)(2) motion, the Court may proceed in three ways: "it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."[3] Here both parties have filed affidavits containing facts that go to the jurisdictional issue. The affidavits appear to include controverted jurisdictional facts. Neither party has requested an evidentiary hearing or an opportunity to conduct limited discovery on the jurisdictional issue.[4]

In the event the district court reaches the jurisdictional issue on the basis of affidavits alone, the burden on the plaintiff is "relatively slight."[5] "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."[6] This means that the plaintiff must set forth specific facts to support a finding of jurisdiction by a preponderance of the evidence.[7] The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and

---

[2] *Carrier Corp.*, 673 F.3d at 449 (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).

[3] *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).

[4] Plaintiffs have requested oral argument (though not an evidentiary hearing) on Defendants' Motion to Dismiss. However, the Court finds that the issues presented are sufficiently clear such that a motion hearing would not assist the Court in ruling on the Motion.

[5] *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir. 1988); *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280 (6th Cir. 1977) ("If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.").

[6] *Cohn*, 839 F.2d at 1169.

[7] *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 & n.3 (6th Cir. 2006)).

the district court should not "consider facts proffered by the defendant that conflict with those offered by the plaintiff."[8] "Dismissal is proper only if [the plaintiff's] alleged facts collectively fail to state a prima facie case for jurisdiction."[9]

## ANALYSIS

Personal jurisdiction over a nonresident defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[10] In a diversity case, the plaintiff must satisfy two showings that personal jurisdiction exists as to a nonresident defendant: (1) the defendant is amenable to suit under the forum state's long-arm statute; and (2) due process requirements of the Constitution are met.[11] Therefore, the Court may only exercise personal jurisdiction over a non-resident defendant if jurisdiction meets the state's long-arm statute and constitutional due process requirements.[12]

First, the law of the forum state determines "whether personal jurisdiction exists, subject to constitutional limitations."[13] In this case, the Tennessee long-arm statute sets forth the circumstances where an action or claim for relief might arise from a nonresident defendant's conduct within the state. Such conduct is defined as "the transaction of any business within the state; any tortious act

---

[8] *PT Pukuafu Indah v. U.S. Sec. & Exch. Comm'n*, 661 F.3d 914, 920 (6th Cir. 2011).

[9] *Carrier Corp.*, 673 F.3d at 449 (quoting *Theunissen,* 935 F.2d at 1459) (internal quotation marks omitted).

[10] *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).

[11] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

[12] *Id*.

[13] *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000).

or omission within this state; the ownership or possession of any interest in property located within this state; or entering into a contract for services to be rendered or for materials to be furnished in this state."[14] Tennessee's long-arm statute is interpreted to be "coterminous with the limits on personal jurisdiction imposed" by the Due Process Clause of the United States Constitution.[15] Consequently, "the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical."[16]

The Court holds that its exercise of personal jurisdiction over Defendants would be inconsistent with the due process requirements of the Constitution. "Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general."[17] The parties disagree over whether specific or general personal jurisdiction exists in this case as to both named Defendants. Furthermore, Defendants argue that Hensley acted at all relevant times in his official capacity as president of Andec and did not purposefully avail himself of the privilege of acting in this forum in his individual capacity.[18] The Sixth Circuit has held that "jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the

---

[14] *Id.* (citing Tenn. Code Ann. § 20–2–214(a)(1), (2), (3), & (5)).

[15] *Id.* (citing *Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452, 455 (6th Cir. 1993)).

[16] *Id.* Plaintiffs argue that personal jurisdiction exists in this case strictly on the basis of the Tennessee long-arm statute. Pl.'s Resp. in Opp'n 11–12. Even so, it is well-settled that a plaintiff must establish that personal jurisdiction comports with a state long-arm statute as well as constitutional due process requirements. *E.g. Schneider v. Hardesty*, 669 F.3d 693, 699 (6th Cir. 2012).

[17] *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549–50 (6th Cir. 2007) (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994)).

[18] Defs.' Mem. in Support 14 (D.E. # 9-1); Defs.' Reply (D.E. # 22).

corporation."[19]  Instead, the Court must make an independent determination about whether it can exercise specific personal jurisdiction over an officer or agent named as a party.[20]  The fact that the officer or agent acts in an official capacity, and not a purely personal capacity, is not dispositive of the jurisdictional issue.[21]  Therefore, the Court must separately analyze the *Southern Machine* factors to consider whether it has specific personal jurisdiction over Andec and Hensley.[22]

Defendants contend that Tennessee's fiduciary shield doctrine applies here and precludes personal jurisdiction over Hensley.  In its essence, the doctrine "provides that, when an individual defendant is an officer of a corporation, a court may not exercise personal jurisdiction over the defendant based on actions taken in his or her corporate capacity."[23]  Courts applying Tennessee law have disagreed over whether due process requires the application of the fiduciary shield doctrine.[24]

---

[19] *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).

[20] *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) ("[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice. . . .") (citations omitted).

[21] *Balance Dynamics Corp.*, 204 F.3d at 698 (holding that the district court erred by dismissing individuals for lack of personal jurisdiction on the basis that they acted in their capacity as agents of the corporation).

[22] *Rush v. Savchuck*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe*, however, must be met as to each defendant over whom a state court exercises jurisdiction.").

[23] *Simplex Healthcare, Inc. v. Marketlinkx Direct, Inc.*, 761 F. Supp. 2d 726, 730–31 (M.D. Tenn. 2011) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)).

[24] *Boles v. Nat'l Develop. Co.*, 175 S.W.2d 226, 251 (Tenn. Ct. App. 2005) (citing *Stuart*, 772 F.2d at 1197 and applying the doctrine); *Jowers v. Beck*, No. 1:09-1131, 2010 WL 455280, at *9 (W.D. Tenn. Feb. 2, 2010) (Breen, J.) (same).  *But see Simplex*, 761 F. Supp. 2d at 731 (Trauger, J.) (declining to apply the doctrine); *MCA Records v. Highland Music*, 844 F. Supp. 1201, 1203 (M.D. Tenn. 1993) (same).

The Court holds that even if the doctrine did not apply to shield Hensley, Plaintiffs have not satisfied their burden to show that personal jurisdiction over Hensley exists in this forum. As such, the Court need not reach the issue of whether the fiduciary shield doctrine applies under Tennessee law. Therefore, the Court will proceed to analyze separately each Defendant's contacts with the state of Tennessee and determine whether Plaintiffs have shown that this Court has personal jurisdiction over Defendants.

## I. Specific Jurisdiction

"An exercise of specific jurisdiction is proper where the claims in the case arise from or are related to the defendant's contacts with the forum state."[25] The Sixth Circuit applies a three-prong test in order to determine whether specific jurisdiction exists and to protect the due process rights of a non-resident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.[26]

Defendants argue that Plaintiffs have met none of the *Southern Machine* factors in this case and so the Court lacks specific personal jurisdiction over Andec, Inc. First, Andec has not purposefully availed itself of the privilege acting within the state of Tennessee. Plaintiffs have produced affidavits from Defendant Hensley as well as Christine Hensley who identifies herself as

---

[25] *Henderson*, 428 F.3d at 615 (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997)).

[26] *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

a Director of Andec, Inc.[27]  Plaintiff Noval is a Mississippi limited liability company.  Even though Plaintiff Coleman claims to be a resident of Tennessee, Defendants assert that no officer or executive of Andec, Inc. ever traveled to Tennessee at any time to negotiate or consummate the asset purchase agreement.  According to Defendants, Hensley met Coleman only once in person prior to executing the agreement in Phoenix, Arizona.[28]  Defendants admit that during the negotiations Hensley telephoned Coleman at a Tennessee telephone number but deny that the use of an interstate facility such as the telephone can provide the minimum contacts necessary to support specific personal jurisdiction.  Defendants argue that Hensley signed the agreement in Iowa and that the agreement contains an Iowa choice of law provision.  After the agreement was signed, Hensley admits that he traveled to meet with Coleman at Metropolitan Bank in Memphis.  However, Defendants maintain that none of these facts demonstrate that they purposefully availed themselves of the privilege of acting in Tennessee.

As previously discussed, Plaintiffs respond that Andec, Inc. has purposefully availed itself of the privilege of conducting business in Tennessee.  More specifically, Plaintiffs argue that Andec, Inc. entered into a contract with Noval, thereby creating a continuous business relationship with Noval in this forum.  Plaintiffs have attached the affidavit of Lavon Coleman setting forth facts about

---

[27] R. Hensley Decl. (D.E. # 9-2); C. Hensley Decl. (D.E. # 9-5); R. Hensley Decl. (D.E. # 22-2).

[28] Based on the record before the Court, it appears that Hensley and Coleman are respectively the principals of the business organizations who were party to the asset purchase agreement at issue.  Each signed the agreement, which is attached to the Complaint, on behalf of his or her company.  Compl., ex. A (D.E. # 1-2).  Additionally, Coleman signed the contract in her individual capacity.  *Id.*

the parties' negotiations and course of dealing.[29]  Plaintiffs assert that even after the sale of the goods occurred, Hensley undertook efforts to sell or resale the goods to third parties and offered to move to Memphis to further those efforts, promising to locate and bring buyers to Memphis to transact business in Tennessee.  Hensley also agreed to come to Memphis to meet Coleman to discuss the state of their transaction only to cancel the appointments later.  Plaintiffs also claim that some equipment was shipped by Defendants to a warehouse in Memphis before being delivered to Plaintiffs.  Based on these facts, Plaintiffs argue that the parties had "a continuous relationship that lasted for a significant period of time" centered in the state of Tennessee.[30]

Viewing the affidavits and the record evidence in the light most favorable to Plaintiffs, the Court holds that Plaintiffs have not made a prima facie showing that Defendant Andec, Inc. purposefully availed itself of the privilege of doing business in the state of Tennessee.  As such this Court lacks specific personal jurisdiction over this Defendant.  The "purposeful availment" prong of the *Southern Machine* test is an "essential" prerequisite for a court to exercise specific jurisdiction over a non-resident party.[31]  As the parties admit in their briefs, "the mere existence of a contract" between a resident of the forum state and a non-resident defendant is insufficient to confer personal jurisdiction over the non-resident.[32]  Rather, the "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" must be

---

[29] Coleman Decl. (D.E. # 16-2).

[30] Pl.'s Resp. in Opp'n 10 (D.E. # 16).

[31] *Calphalon,* 228 F.3d at 722.  The *Southern Machine* court dubbed this prong a "*sine qua non.*"  *Southern Machine*, 401 F.2d 381–82.

[32] *Calphalon,* 228 F.3d at 722.

considered to determine whether "the defendant purposefully established minimum contacts within the forum."[33]   As such, the Court will analyze each of these factors to decide whether Andec had minimum contacts with the state of Tennessee.

## A. Prior Negotiations

Applying these factors to the record before the Court, Plaintiffs have not made a prima facie showing that Andec, Inc. purposefully availed itself of doing business in Tennessee.   First, the parties's prior negotiations do not show that Andec, Inc. purposefully established minimum contacts with the state of Tennessee.   The undisputed evidence shows that Plaintiff Noval is a Mississippi company with its principal place of business in Olive Branch, Mississippi.[34]   Accepting Plaintiff's evidence as true, the parties' negotiations for the asset purchase agreement occurred by telephone via Plaintiff Coleman's Tennessee telephone number.   Plaintiff has also adduced evidence that Coleman is a resident of Tennessee and that Defendant Hensley met Coleman in Tennessee to

---

[33] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

[34] The Court notes that the agreement itself includes a section on notice and provides the following address for any notice directed to Noval:

Noval International Resources, LLC
Lavon Worley Coleman, President
Po (sic) Box 381828
Germantown, TN 38183

Asset Purchase Agreement, § 9.4

The agreement does not indicate whether this post office box was an official mailing address for Noval or for Coleman.   For their part, Defendants' have adduced undisputed evidence that the executed copy of the agreement was delivered overnight to Coleman at an address in Nesbit, Mississippi.   R. Hensley Decl. ¶ 4 (D.E. # 22-2).

negotiate the agreement and discuss several aspects of the transaction.[35]  The Court finds, however, that these contacts occurred not because Defendant endeavored to conduct business in Tennessee but simply because Plaintiff Coleman lives here.  The Sixth Circuit has held that the purposeful availment requirement is not satisfied where the non-resident defendant had contact with the forum state "only because the plaintiff choose to reside there."[36]  In *Euroglas*, the Sixth Circuit found that a non-resident defendant had not made any other effort to "exploit any market for its products" in the forum state and that it was "purely fortuitous" under the circumstances that the non-resident had contact with the forum state.[37]  Likewise, Andec, Inc., an Iowa corporation, negotiated the agreement with Noval, a Mississippi limited liability company.  The Court finds that it was "purely fortuitous" that telephone conversations occurred between the parties at Coleman's Tennessee telephone number.  While physical presence of a non-resident is not required for personal jurisdiction, "the use of interstate facilities such as the telephone and mail is a secondary factor and cannot alone provide the minimum contacts required by due process."[38]  Furthermore, standing alone, the single meeting that took place in Memphis during the negotiations does not show that Defendants intended to

---

[35] Coleman Decl. ¶¶ 8, 9.

[36] *Int'l Techs. Consultants v. Euroglas*, 107 F.3d 386, 395 (6th Cir. 1997).

[37] *Euroglas*, 107 F.3d at 395.

[38] *Reynolds*, 23 F.3d at 1119 (6th Cir.  1994) (quoting *Cohn*, 839 F.3d at 1169). Furthermore, the Sixth Circuit has held that the purposeful availment prong is not satisfied where a resident of the forum state, not the nonresident defendant, initiates the communications.  *Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489 (6th Cir. 2008) (finding no specific jurisdiction where non-resident received but did not initiate multiple wire transfers from forum state); *Rice v. Karsch*, 154 F. App'x 454, 460–61 (6th Cir. 2005) (finding no specific jurisdiction where non-resident responded by mail and e-mail to communication initiated in forum state); *Calphalon,* 228 F.3d at 723 (finding no specific jurisdiction where non-resident conducted telephone, fax, and email correspondence with resident corporation).

"exploit any market for its products" in the state of Tennessee. The course of the parties'
negotiations, therefore, does not support a finding of purposeful availment.

## B. Contemplated Future Consequences and the Terms of the Contract

Second, the contemplated future consequences of the contract also fail to show that Andec,
Inc. purposefully availed itself of the privilege of conducting business in the state of Tennessee. As
discussed previously, neither entity is a Tennessee business organization, and neither has its principal
place of business in Tennessee. The terms of the contract suggest that this was a one-time
transaction. The parties' agreement included a schedule of dates certain by which Plaintiffs agreed
to make payments for the assets being sold.[39] For example, Plaintiffs were to make an initial
payment of $1.25 million by December 23, 2010, and second payment of $1.25 million by January
3, 2011.[40] Within twenty-one (21) days of the receipt of these two payments, Andec was to ship
specified goods from locations in Colorado, Oregon, Florida, and Oklahoma.[41] The parties agreed
that thereafter Andec "would make reasonable efforts in good faith" to ensure delivery of all
remaining goods by September 1, 2011.[42] The agreement also defined Andec's shipping obligations,
specifically, that Andec was to pay all packaging and shipping costs and ship the goods "to Buyer
FOB Memphis, Tennessee."[43] Exhibit C to the agreement addressed shipping instructions and stated
that "FOB Memphis means delivery at [warehouse of Noval Resources International, Inc?]."

---

[39] Asset Purchase Agreement, § 2.1.

[40] *Id.* at § 2.1(a) & (b).

[41] *Id.* at § 2.1.

[42] *Id.*

[43] *Id.* at § 2.2.

Based on the terms of the agreement, the Court finds that the contemplated future consequences of the contract were limited to the transaction set out in the agreement. The parties intended to complete an installment sale for the assets listed in the agreement at set prices. The parties also agreed that the shipment of the goods was to be completed by September 1, 2011. Under the circumstances, the contract itself provided for a "one-time transaction," and not "a continuous relationship" as Plaintiffs suggest.[44] Furthermore, the fact that the agreement specified delivery "FOB Memphis" does not by itself suggest that the parties contemplated performance of the contract in the state of Tennessee. Although neither party has addressed this term, the parties have raised the issue that some of the goods were delivered to a warehouse in Memphis. The Court notes that "FOB" or "free on board" indicates in commercial sales that "the seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass the transporter's rail."[45] Several federal courts have held that a non-resident does not intentionally avail itself of doing business in the forum state simply by shipping goods FOB to the forum.[46] For these reasons, the Court holds that Plaintiffs

---

[44] *Air Prods.*, 503 F.3d at 551–52 ("[T]he parties did not engage in a one-time transaction, but in a continuing business relationship that lasted many years . . . . Such contacts are not 'random,' 'fortuitous,' or 'attenuated,' but are the result of deliberate conduct that amounts to purposeful availment.")

[45] Black's Law Dictionary (9th ed. 2009).

[46] *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1272–73 (11th Cir. 2010) ("An F.O.B. forum delivery term does not necessarily create minimum contacts because it is a formal term relating to title and who bears the risk of loss. Particularly when the goods are shipped outside of the forum, an F.O.B. delivery term may not be a sufficient indicator of the defendant's purposeful availment of the forum's laws."); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 188–89 (5th Cir. 1978); *Harris v. N. Am. Rockwell Corp.*, 372 F. Supp. 978 (N.D. Ga. 1974).

The analysis is markedly different where a buyer takes delivery of goods FOB in the forum state (as opposed to the seller shipping the goods FOB to the forum state). *Cf. ITL Int'l*

14

have not shown that Andec availed itself of doing business in Tennessee by the terms of the contract or the future consequences of the agreement.

The Court finds that the precedent on which Plaintiffs rely is readily distinguishable. Plaintiffs cite for support the Sixth Circuit's decision in *Cole v. Miletti*, 133 F.3d 433 (6th Cir. 1998). In that case the Sixth Circuit found that a non-resident defendant had purposefully availed himself of the privilege of doing business in Ohio based on a contract he had with an Ohio resident. The contract at issue in *Cole* was a surety agreement between business partners. The non-resident defendant had organized a corporation under the laws of California, and the Ohio resident served as an officer and director for the corporation.[47] The non-resident defendant agreed to buy out the Ohio resident's shares of company stock and signed a surety agreement to pay back loans the Ohio resident had taken out to capitalize the corporation.[48] Under the terms of their contract, the non-resident defendant promised to repay the Ohio resident's loans by June 16, 1985, but failed to do so.[49] The Sixth Circuit concluded that the purposeful availment prong was satisfied because the non-resident defendant had created a "continuing obligation" to pay the loans for an Ohio resident.[50] The parties had a business relationship that pre-dated their contract by more than a decade, and the Ohio

---

*Inc., v. Constenla, S.A.*, 669 F.3d 493, 499 (5th Cir. 2012) (holding that non-resident defendant had purposefully availed itself of doing in business in forum by taking delivery FOB in forum state); *Steelcraft Serv. Co., Inc. v. Enesco Corp.*, 815 F. Supp. 234, 238 (S.D. Ohio 1993) (holding that buyer who purchased product "FOB Ohio" was on notice that it might be sued in Ohio over the products).

[47] *Cole*, 133 F.3d at 435.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 436

resident had been a significant investor in the non-resident's California corporation.[51]  For these reasons, it was "fundamentally fair and constitutional" for the Ohio court to exercise personal jurisdiction over the non-resident defendant.[52]

Unlike the non-resident defendant in *Cole*, Andec entered into a contract for the sale of goods with a company organized under the laws of Mississippi with its principal place of business in Mississippi.  To the extent that Andec undertook a "continuing obligation," that duty was not owed to a Tennessee business organization and Andec was not obligated to perform any services in the state of Tennessee.  It is true that Plaintiff Coleman, a Tennessee resident, signed the contract on behalf of Noval as well as in her individual capacity.  Nevertheless, unlike the individual parties to the contract in *Cole*, there is no evidence that Coleman had a long-term business relationship with either Defendant, predating the contract at issue here.  In other words, it cannot be said that either Defendant had a "continuing obligation" to Coleman.  For these reasons, the Court finds that the holding in *Cole* does control this case.  Thus, Plaintiffs have not established that the terms of the contract or the future consequences contemplated by the parties support a finding of purposeful availment.

## C.  The Parties' Actual Course of Dealing

Finally, the parties' actual course of dealing does not suggest that Andec purposefully availed itself of the privilege of doing business in this forum.  Plaintiffs have adduced evidence that Defendant Hensley made offers to travel to Memphis and stay for several days in an effort to assist

---

[51] *Id.* at 435.

[52] *Id.* at 436.

Plaintiffs in finding buyers for the goods. Plaintiffs have also shown that Hensley agreed to meetings with Coleman in Memphis to discuss the goods, only to cancel the parties' meetings at the last minute. The Court finds that this evidence does not actually show that Andec had minimum contacts with the state of Tennessee. Rather, the evidence only establishes that Hensley on behalf of Andec contemplated travel to Memphis but never actually made the trips. The mere possibility of contact does not establish the "minimum contacts" necessary for personal jurisdiction. Furthermore, even if Hensley had made the trips, Plaintiffs have not shown that Hensley intended to assist Plaintiffs by conducting business in Tennessee. The evidence shows that Hensley was willing to "go to work on marketing this stuff" and "assist in the sale of the telecommunication equipment."[53] Because Plaintiff Noval has its principal place of business in Mississippi, Hensley's proposal to help Plaintiffs does not show that Andec intended to "exploit any market" in the state of Tennessee in furtherance of the parties' transaction.

Based on the record evidence, the Court holds that Plaintiffs have not shown that Andec, Inc. purposefully availed itself of the privilege of doing business in Tennessee. The parties' negotiations do not indicate that Andec acted for the purpose of exploiting markets in this forum. Likewise, the terms of the contract and the future consequences the parties contemplated do not evidence that Andec acted intentionally to avail itself of doing business in Tennessee. The parties' actual course of dealing also does not support a finding that Andec purposefully availed itself of taking action in the state of Tennessee. Because Plaintiffs have not established the first element of the *Southern Machines* test, the Court need not decide whether Plaintiffs' cause of action arises from Andec's

---

[53] Coleman Decl. ¶ 16.

activities in this forum or whether it would be reasonable for the Court to exercise jurisdiction over Andec. The Court concludes then that it does not have specific personal jurisdiction over Andec. Therefore, Defendants' Motion is **GRANTED** on this issue.

## D. Ryan Edward Hensley

For the same reasons that specific personal jurisdiction does not exist as to Andec, Inc., the Court holds that specific personal jurisdiction over Hensley is also lacking. Even though the Court must make an independent assessment of Hensley's minimum contacts with the forum,[54] the Court finds that the same jurisdictional facts relevant to Andec are likewise relevant to its analysis regarding Hensley. Just as Plaintiffs have failed to show that Andec purposefully availed itself of the privilege of doing business in Tennessee, the Court holds that Plaintiffs have not shown that Hensley acted with the same purpose or intention. As such, Plaintiffs have not proven the first element of the *Southern Machines* test.

First, Plaintiffs have not shown that Hensley's participation in the parties' negotiations created the quality of contacts with Tennessee required to support personal jurisdiction. Plaintiffs have come forward with proof that Hensley traveled to Memphis on one occasion to meet with Coleman and negotiate the agreement. It also appears that Hensley engaged in telephone conversations with Coleman about the proposed transaction. For the reasons previously discussed, these acts were random, fortuitous, and otherwise insufficient to establish specific personal jurisdiction over Defendants in this forum. Second, Plaintiffs have also failed to show that the terms of the contract or the future consequences of the contract in any way required Hensley to perform

---

[54] *Balance Dynamics Corp.*, 204 F.3d at 698

duties or carry out activities in Tennessee. Finally, Plaintiffs have not carried their burden to show that Hensley had minimum contacts with Tennessee in the course of performing the contract. Again, Plaintiffs have at best proven that Hensley was willing to travel to Memphis and assist Plaintiffs in the marketing of the goods. There is no evidence that Hensley actually made such a trip or attempted to "exploit any market" in the state of Tennessee. Under the circumstances, the Court concludes that its exercise of specific personal jurisdiction over Hensley would be inconsistent with traditional notions of fair play and substantial justice. Therefore, Defendants' Motion is **GRANTED** on this issue.

## II. General Personal Jurisdiction

The Court now considers whether it may properly exercise general personal jurisdiction over either Defendant. A court may have general jurisdiction over an out-of-state defendant when a defendant's "contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state."[55] In other words, general personal jurisdiction exists where a defendant's contacts with the forum state are so "pervasive" or "very substantial" that the Court can find jurisdiction even though the suit has nothing to do with those contacts.[56] For the reasons that follow, the Court concludes that general personal jurisdiction is absent as to these Defendants.

First, Andec maintains that it owns no property in the state of Tennessee, has conducted no

---

[55] *Intera Corp.*, 428 F.3d at 615 (citing *Bird v. Parsons,* 289 F.3d 865, 873 (6th Cir. 2002)).

[56] *Conn*, 667 F.3d at 718 (citing 4 Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5, at 520 (3d ed. 2002) (other citations omitted)).

business in Tennessee, and is not registered to do business in Tennessee. Defendants argue that Andec does not have the kind of continuous and systematic contacts with the state of Tennessee to make it subject to this Court's general personal jurisdiction. Plaintiffs respond with evidence that Andec has engaged in business in the state of Tennessee. In her declaration, Coleman avers that Hensley made general remarks to her about Andec's business transactions and clients in Shelby County, Tennessee.[57] More specifically, Coleman states that upon information and belief, Andec has engaged in sales for power generators in Tennessee since 2003 and maintains a warehouse in Shelby County.[58] According to Coleman, Hensley also sent her an email dated January 27, 2012, stating that he might be in "the Memphis area" for "business reasons" some time in February 2012.[59] Based on this evidence, Plaintiffs claim that Andec has sufficient minimum contacts with the state of Tennessee to support the Court's general personal jurisdiction over Andec.

Viewing the evidence before the Court in the light most favorable to Plaintiff, the Court finds that general personal jurisdiction does not exist as to Andec. The evidence shows that Andec maintains a warehouse in Shelby County and has conducted business in the state of Tennessee for several years prior to the filing of this lawsuit.[60] However, the Sixth Circuit has recently held that

> [T]he mere presence of property in a State does not establish a sufficient relationship

---

[57] Coleman Decl. ¶¶ 10–12.

[58] *Id.* ¶¶ 14, 15. The Sixth Circuit has stated that "information and belief" assertions are assumed true for purposes of establishing the existence of personal jurisdiction and will suffice to survive a motion to dismiss pursuant to Rule 12(b)(2). *Palnik v. Westlake Entm't, Inc.*, 344 F. App'x 249, 252–53 (6th Cir. 2009) (citing *Theunissen,* 935 F.2d at 1459.

[59] *Id.* ¶ 13.

[60] Plaintiff Coleman's declaration does not specify whether Andec owns or leases the warehouse. For the reasons set forth herein, the Court finds that the distinction is not material.

between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action. The ownership of property in the State is a contact between the defendant and the forum, and it may suggest the presence of other ties. Jurisdiction is lacking, however, unless there are sufficient contacts to satisfy the fairness standard of *International Shoe*.[61]

Even accepting Plaintiff's claim that Andec owns or leases a warehouse in Memphis (which Defendants deny), this incident of ownership merely suggests the presence of other ties and does not establish the kind of continuous and systematic contacts with the forum required to establish general personal jurisdiction. Plaintiffs have also come forward with evidence that Andec has engaged in business transactions in Tennessee, including the sale of power generators, and has clients in the Memphis-Shelby County area. Accepting these facts as true, there is no evidence of how substantial or extensive Andec's business activities in the state of Tennessee are.[62] Plaintiffs have no evidence to demonstrate that Andec has the kind of pervasive contacts with Tennessee that "would approximate physical presence within the state" or that would lead Andec to "reasonably anticipate engendering litigation unrelated to [its] presence in [the forum state]."[63]

Likewise, the Court concludes that general personal jurisdiction over Hensley is lacking. With respect to Hensley, Defendants argue that Hensley does not reside in Tennessee, does not travel to Tennessee, and does not own any property of any kind (personal or business) in Tennessee. Based on these facts, Defendants contend that general personal jurisdiction over Hensley does not exist. Plaintiffs argue in response that on previous occasions Hensley spoke to Coleman about other

---

[61] *Conn*, 667 F.3d at 719 (quoting *Rush*, 444 U.S. at 328) (other citations omitted).

[62] *Id.* (holding that intermittent travel to the forum state did not constitute "continuous and systematic contacts" with the forum).

[63] *Id.* at 720.

business dealings and clients he had in the Memphis area.  The Court holds that just as with Andec, Plaintiffs have not made a prima facie showing that Hensley has minimum contacts with the state of Tennessee "approximat[ing] physical presence" in the state of Tennessee.  Plaintiffs have only shown that Hensley made a single trip to Memphis.  None of the evidence Plaintiffs rely on actually shows that Hensley himself frequently travels to Memphis or conducts business of any kind in the state of Tennessee.  Therefore, the Court concludes that general personal jurisdiction over Hensley does not exist in this forum.  As such, Defendants' Motion to Dismiss is **GRANTED** as to these issues.

## CONCLUSION

Having concluded that personal jurisdiction does not exist in this forum as to both Defendants, the Motion to Dismiss pursuant to Rule 12(b)(2) is **GRANTED**.  Because the Court dismisses this matter for lack of personal jurisdiction, the dismissal is without prejudice.[64]

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: June 20, 2012.

---

[64] *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 520 (6th Cir. 2006) (citation omitted).